No. 44,073

(407 P. 2d 528)

Robert L. Goodwin, *Appellant,* v. The State of Kansas, *Appellee.*

Opinion filed November 6, 1965.

*Albert S. Teed,* of Hutchinson, argued the cause and was on the briefs for the appellant.

*Lane H. Cronhardt,* assistant county attorney, argued the cause, and *Robert C. Londerholm,* attorney general, *Richard J. Rome,* county attorney, and *Raymond F. Berkley,* assistant county attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This is an appeal from an order denying relief sought pursuant to K. S. A. 60-1507. It appears that appellant, pursuant to a complaint duly made in the city court of the city of Hutchinson, was arrested by warrant dated April 27, 1964, charging him with burglary in the second degree, and that on April 28, 1964, he was brought into that court at which time he pleaded not guilty to the charge and requested a court-appointed attorney. On April 30, 1964, appellant, being present in person and by his attorney, Albert S. Teed, waived his preliminary hearing and was bound over to the district court of Reno county, Kansas, for trial. On May 4, 1964, he appeared in the latter court, being represented by Mr. Teed, his court-appointed attorney, and he pleaded guilty to the offense charged, and, the prosecution having offered into evidence an original journal entry dated December 5, 1957, showing appellant's conviction in the same court of a like offense, was sentenced to the state penitentiary as an habitual criminal. While there confined pursuant to this sentence appellant commenced this proceeding seeking to vacate and set it aside. The trial court appointed another attorney for appellant, granted a hearing at which appellant offered evidence, and thereafter denied the relief sought, from which order this appeal is taken.

At the hearing the appellant testified substantially as follows:

"That he is 24 years of age and had lived in Hutchinson approximately 15 years; that he was divorced; that he had a high school education; that on April 25, 1964, he was arrested at the Moose Club on North Lorraine in Hutchinson, Kansas, by the Hutchinson Police Department; that he was 'cuffed' and searched at the scene and taken to the police station Sunday morning; that he was drunk at the time of his arrest, which was at approximately 3:00 A. M. Later, and at about 8:00 A. M., Detectives Sumner and Mangels, of the Hutchinson Police Department detective staff, came to the station to question him; that he was sick from the effects of alcohol but sober at the time. The detectives questioned him about the burglary and asked him about other burglaries that had occurred in and around Hutchinson. He wouldn't give them any information about anything. They asked him to sign a statement and to 'cop out' to other burglaries for several hours. He then wrote a statement in his own handwriting and signed the same in the presence of Detective Sumner. The defendant testified that he requested counsel and was told that he could make a phone call after the statement was signed.

"On Monday morning he called a local attorney, Mr. Bill R. Cole, Hutchinson, Kansas, and Mr. Cole asked him for a sum of money, that he did not have, for representation. He then called DeAnn DeHart, his girl friend. Detective Sumner told him 'there will be time for a lawyer later.' He was then transferred to the Reno County Jail and counsel was appointed for him either that day or the next; that Detective Sumner told him 'what you say might be used against you, but let's get this statement signed'; that Detective Sumner did not mention the penalty for the crime he was charged with or the habitual criminal act; that he, the petitioner, had no knowledge of the habitual criminal act before entering his plea of guilty; that Detective Sumner told him there was the possibility of a parole; that he knew that a conviction for burglary carried a penalty of 5 to 10 years, and that he would be charged with second degree burglary; that he would not have plead guilty if he had known about the habitual criminal act. Defendant admits he plead guilty to a prior charge of burglary, second degree; that he did 15 months in the Kansas State Industrial Reformatory on that offense and did 13 months on a 2-year parole and was released from parole. Defendant does not deny this prior conviction. . . . Detectives Mangels and Sumner of the Hutchinson Police Department talked to the defendant on Sunday. They told him he had only one charge against him and there was, in fact, only one charge filed against him. They made no threats, and informed him that any statement he made would be used against him. He cannot remember whether or not he was advised of his right to counsel. The defendant is shown and identifies his statement, dated April 26, 1964, at 8:50 A. M., which statement shows on its face that the defendant was advised in writing of his right to counsel.

"The defendant was taken before Judge Bryan Woodson of the City Court, Hutchinson, Kansas, on April 28th, and on April 30, 1964, he waived preliminary hearing but does not recall whether or not he had counsel . . . no mention was made of the habitual criminal act . . . Mr. Teed told him, prior to entering a plea of guilty, that they might try to give him twice as much time, but he would have to hope for the best."

Another witness called by appellant testified that she was his girl friend and that he called her the day after his arrest and told her where her car was and that he was charged with burglary; that she witnessed the signature of appellant to a consent to let the officers search his apartment; that appellant willingly signed such consent. Mr. Teed, a member of the Reno County Bar, testified on behalf of the appellant that he was appointed to represent appellant on April 29, 1964, and that although he did not discuss the habitual criminal act with the county attorney, he did advise appellant that by reason of the fact he had had previous convictions the habitual criminal act could probably be invoked but he did not know; appellant told him he had been paroled on a charge of burglary in 1957 and that the parole was later revoked and appellant had served a term in the state industrial reformatory.

It was stipulated that appellant was represented by counsel at the time of his waiver of preliminary hearing on April 30, 1964, but that he was not represented by counsel upon his initial appearance on April 28, 1964, before the examining magistrate.

Upon this showing the trial court made findings of fact specifically finding that the burden of proof had not been sustained by appellant and that no constitutional rights had been violated and it denied the relief sought.

On the day following this hearing, it appears that the trial court was apprised in some manner that the appellant desired to make application for a rehearing and appellant was brought before the trial court again and asked to state his reasons for rehearing at which time the following occurred:

"THE DEFENDANT: I haven't had a chance to discuss it with Mr. Hess, so actually I was wanting to discuss it with him before I went into it any further, but I haven't had any chance to talk to him since I was in court yesterday. On this rehearing, it would be because of failing to inform me of the double up charge that was brought against me, and also my attorney, Mr. Teed, failed to notify and advise me of the charges, and actually nothing against Mr. Teed, but one thing I would want to use would be having incompetent counsel during the proceedings.

"THE COURT: Well, it is the court's opinion that you had fully brought out the failure to be informed of the imposition of the habitual criminal act, that was fully brought before the court, and you had an opportunity to say anything that you desired in regard to Mr. Teed. Do you have any evidence of Mr. Teed's incompetency other than your uncorroborated statement?

"THE DEFENDANT: No.

"THE COURT: Of course the law places the burden on you to go beyond that, as I indicated in my remarks yesterday. I see no new ground why you

should be granted a rehearing, and the application for rehearing will be denied."

Mr. Hess, the attorney previously appointed by the trial court to represent appellant, was not present at this latter appearance.

In addition to the abstract of the record and the brief prepared and filed by appellant's appointed counsel upon this appeal (who was also appointed counsel in the criminal action) this court has before it a lengthy handwritten copy of what is designated appellant's "Statement of Points" and a brief containing both citation of authority and argument, together with a purported factual statement of what occurred, accomplished by appellant in his own handwriting, which documents at the request of counsel for appellant have been considered by this court in connection with this appeal.

Appellant urged in the hearing before the trial court, and urges here, that certain constitutional rights were denied. First, he alleges that he was without counsel at his arraignment, but the record conclusively indicates the contrary. Appellant was represented by counsel both at the time of his waiver of preliminary hearing, and at the time of his arraignment in district court. The term *arraignment* is sometimes used loosely. Although not explicitly defined by statute, it refers in general to the first step in the progress of a trial wherein the accused is called to the bar of the court; his identity established; he is informed of the charge against him and called upon to plead to that charge (22 C. J. S., Criminal Law, § 406; 21 Am. Jur. 2d., Criminal Law, § 452). It would appear that what appellant is complaining about is the fact that when he was initially brought before the magistrate issuing the warrant for his arrest upon the charge of burglary he was without counsel. The appearance before an examining magistrate—in this case the city court of the city of Hutchinson—upon return of a warrant pursuant to K. S. A. 62-602 in a felony case is not properly termed an *arraignment,* there being no authority in such magistrate to arraign one charged with a felony (*State v. Talbert,* 195 Kan. 149, 402 P. 2d 810, certiorari denied, 382 U. S. 868, 15 L. Ed. 2d 107, 86 S. Ct. 143, and we are not aware of any authority for or constitutional right to the assistance of counsel at this point under the circumstances shown. At this initial hearing the record does indicate appellant "was duly arraigned by having the charge distinctly read to him, and being required to plead thereto, pleaded not guilty." It was proper for the accused to be informed of the

charge against him and for that fact to be recorded, but the balance of the procedure was improper and should not have been followed. However, this purported arraignment and plea could not in any wise prejudice the rights of the appellant especially in view of the fact he did plead not guilty (*State v. Talbert*, supra, *State v. Jordan*, 193 Kan. 664, 396 P. 2d 342, cert. den. March 1, 1965, 380 U. S. 920, 13 L. ed. 2d 805, 85 S. Ct. 917).

Appellant complains he did not have notice of an intent to invoke the habitual criminal act against him. The record clearly discloses appellant's attorney told him of the provisions of the habitual criminal act and the possibility of its being invoked against him in view of an undisputed previous conviction, and in his handwritten brief he further says that his attorney stated to him that "in all probability the habitual criminal action could be invoked."

Reasonable notice of an intent to invoke the provisions of the habitual criminal statute is required, but no particular form thereof is necessary. The reason for such notice to be given is to afford an opportunity for a full and complete hearing as to whether the accused is properly subject to be sentenced under the act. This is a right which is subject to waiver.

In *Browning v. Hand*, 284 F. 2d 346 (1960), cert. den. 369 U. S. 821, 7 L. ed. 2d 786, 82 S. Ct. 833, it was said:

"One convicted of a felony in Kansas is entitled to notice of the hearing held to determine whether he is subject to the provisions of the habitual criminal statute, and due process requires notice. This is, however, a right which can be waived. [Citations] Assuming that prior notice of the hearing was not given, the defendant was present at the hearing with his attorney, and no contention is made that he did not have full opportunity to be heard on all matters under consideration and to controvert the allegation that he had been convicted of previous felonies which would make him subject to the penalties of the habitual criminal statute. The time for complaint was then, not now." (p. 347.)

Here it appears evidence of the previous conviction was regularly received by the trial court at a time when appellant was present with his attorney and, being afforded the right of allocution, he made no objection (his brief states he admitted the previous conviction at the time of his sentencing) although he had previously been advised by his attorney of the provisions of the habitual criminal act and that the same might be invoked against him. Under such circumstances we hold there was no denial of constitutional rights (See *Johnson v. Crouse*, 191 Kan. 694, 383 P. 2d 978).

Appellant urges he had no counsel at the time he appeared the

second time before the trial court and asked for a rehearing, which fact is conceded. The entire record of that proceeding is before us. It would appear that out of an abundance of caution the trial judge gave appellant another opportunity to be heard. It seems clear that appellant had nothing new to present other than alleged incompetency of counsel and appellant specifically stated he had nothing to present on this other than his uncorroborated statement. The court was not in any event required to act at all as it was not obliged to entertain a second or successive motion for similar relief on behalf of the same prisoner (K. S. A. 60-1507 [c]; see, also, rule No. 121 [d] of this court). Assuming, arguendo, that his application might have been treated as a motion for relief on some other ground, the court certainly did not err in not taking further proceedings as it has been repeatedly held that the burden of showing incompetent and inadequate counsel to the extent necessary to overcome the presumption of regularity of a conviction is not sustained by the unsupported and uncorroborated statements of the one convicted (*Trugillo v. Edmondson,* 176 Kan. 195, 270 P. 2d 219; *State v. Calhoun,* 194 Kan. 378, 399 P. 2d 886; *State v. Richardson,* 194 Kan. 471, 399 P. 2d 799; *Huston v. State,* 195 Kan. 140, 403 P. 2d 122). Moreover, we have gone over the entire record before us, including the purported factual statement by appellant in his handwritten brief, and we find nothing indicating inadequate representation. This latter instrument contains contradictory and inconsistent factual allegations regarding counsel, e. g., in it counsel is charged with incompetency in failing to inform appellant of the habitual criminal act, and yet he states that his attorney did tell him about the habitual criminal act and he claims his plea of guilty was induced by the fact he believed he would be sentenced under it if he did not plead guilty. The existence of this character of allegations lends support to the soundness of the principles enunciated in the cases last above cited.

The record before us shows full compliance with the statutory requirement of K. S. A. 62-1304 upon arraignment and sentencing in district court. Further it reflects faithful service by court-appointed counsel at appellant's preliminary hearing, upon the hearing of the motion to vacate the sentence and upon this appeal. In justice to appellant's counsel here, a respected, reputable member of the Reno County Bar, and to all concerned, it should be said that appellant also states in his brief that he believes his attorney "to be a man of integrity and honesty."

Appellant claims he was deprived of the assistance of counsel at the time he was interrogated and when he made a statement. It appears that appellant was arrested at the scene of the alleged burglary at about 3:00 a. m. the morning thereof at which time he says he was drunk, and that he was questioned a few hours later. He states in his brief he was told anything he said would be used against him, and it also appears he was advised of his rights to counsel and that this was done prior to the making of any statement. The nature of any statement made does not appear. However, the mere fact an accused voluntarily makes a statement in the absence of counsel admitting the commission of a crime does not amount to a denial of constitutional right to assistance of counsel (*Powers v. State,* 194 Kan. 820, 402 P. 2d 328). Moreover, the rule is well-established that a judgment of conviction of crime carries with it a presumption of regularity, and where one convicted of a crime attacks such judgment on the ground that his constitutional rights were violated, he has the burden of proof to establish such fact by a preponderance of the evidence, and such burden is not sustained by unsupported and uncorroborated statements by the plaintiff (*Huston v. State,* supra, and cases cited therein), and the trial court found against him on this issue.

Appellant raises various other questions in his brief, all of which we have considered. Suffice it to say the record reveals appellant had a full evidentiary hearing, the trial court found specifically against him on the justiciable issues and we discern no error in that action. The trial court's judgment is affirmed.

APPROVED BY THE COURT.

FONTRON, J., not participating.